David W. MONROE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–879A231.

Court of Appeals of Indiana,
Second District.

April 29, 1981.

Stephen H. Downs, Plummer, Tiede, Magley, Metz & Downs, Wabash, for appellant.

Linley E. Pearson, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Appellant, David W. Monroe, appeals the revocation of his probation. He presents the following issue for review:

> Whether the evidence was sufficient to support the finding upon which the revocation was based.

We reverse.

On February 13, 1978, because of a burned-out headlight and taillight, a police officer stopped Monroe, who in August 1977, had pleaded guilty to a charge of Delivery of a Controlled Substance for which he had received a suspended sentence with conditions. Kent Allen Persley, a convicted felon, was in the car with Monroe. One of the conditions of Monroe's probation was: "You will not *knowingly* associate with anyone who has been convicted of a felony." (emphasis supplied). The State filed a Petition to Revoke Probation on February 24, 1978, alleging that Monroe had violated this condition by being with Persley. Finding that Monroe had violated the condition, the court revoked his probation.

### I.

■ Appellant asserts that the finding, that he "knowingly" associated with a convicted felon, was based upon insufficient evidence. When presented with a sufficiency of the evidence question, we do not reweigh the evidence nor judge the credibility of witnesses, rather we "will look to that evidence and the reasonable inferences therefrom which support the finding of the trial court." *Taylor v. State* (1973) 260 Ind. 64, 66, 291 N.E.2d 890, 891. Therefore, we must determine whether from the evidence most favorable to the State it was reasonable to infer that Monroe knowingly associated with a convicted felon, i. e., Persley.

■ To associate "knowingly" with a convicted felon, one must *know* that the person with whom he associates is a convicted felon. Our conclusion in this regard is drawn from the only direct authority disclosed by our research. *Prince v. State* (Tex.Cr.App. 1972), 477 S.W.2d 542, 543; *Shortnacy v. State* (Tex.Cr.App. 1972), 474 S.W.2d 713, 715; *Steed v. State* (Tex.Cr. App. 1971), 467 S.W.2d 460, 461; *Jackson v. State* (Tex.Cr.App. 1971), 464 S.W.2d 153, 156. In each case probation was revoked because of an alleged violation of the probation condition that the probationer "avoid persons . . . of disreputable or harmful character." In each case the reviewing court held that the trial court by revoking the probation had abused its discretion, because there was no evidence that the probationer had had knowledge of the disreputable character of the person or persons with whom he had associated.

Authority exists affirming probation revocations when the evidence showed that the probationer was in a situation where he would have had reason to know that the person with whom he associated was of a character proscribed by his probation conditions. In *Bunn v. State* (1978), 144 Ga.App. 879, 243 S.E.2d 105, there was evidence that the probationer lived with his brother and a cousin-by-marriage who both had criminal records. In *State v. W.* (1968) 31 A.D.2d 163, 295 N.Y.S.2d 767, *aff'd on other grounds*, 24 N.Y.2d 732, 249 N.E.2d 882, 302 N.Y.S.2d 260 (1969), there was evidence that the probationer obtained and injected heroin with the person, who was also a probationer, and accompanied him to the probation office. In an appeal from the first attempt to revoke a probation, *Gill v. State* (Tex.Cr.App. 1977), 556 S.W.2d 354,

the probation revocation was reversed and the cause remanded, because there was not sufficient evidence that the probationer knew of his associate's criminal record. Later in *Gill v. State* (Tex.Cr.App. 1980), 593 S.W.2d 697, a review of a subsequent revocation, there was evidence that the probationer had known the person prior to their respective arrests, had visited this person in jail, and had been told expressly by his own probation officer to avoid this person. The contrasting results in the *Gill* appeals underscore the effect of establishing the probationer's knowledge.

■ Thus the question before us is whether from the evidence most favorable to the State it was reasonable to infer that Monroe knew of Persley's felony conviction.[1] If it was not reasonable, then the court abused its discretion in finding that Monroe violated the probation condition. In this connection we recognize that the State must prove the violation of a probation condition only by a preponderance of the evidence, I.C. 35–7–2–2(d) (Burns Code Ed. 1979), not beyond a reasonable doubt.

■ It is undisputed that Monroe was accompanied by Persley on February 13, 1978. It is clear from the record that Monroe had been acquainted with Persley for about one and a half years prior to that date, and that they had once been arrested together for drinking. However, there was no evidence from which a reasonable trier of fact could conclude that Monroe knew that Persley had been convicted of a felony in 1975. To do so might result in a correct conclusion, but a conclusion, nevertheless, premised solely upon surmise and conjecture.

We hold that the evidence was insufficient to permit a reasonable conclusion that Monroe violated this condition of his probation.

The judgment of the trial court is reversed, and the cause remanded for judgment consistent herewith.

SHIELDS, J. concurs.

BUCHANAN, C. J., dissents and files separate opinion.

BUCHANAN, Chief Judge, dissenting.
*SUMMARY OF THE FACTS*—David Monroe first made Kent Persley's acquaintance late in 1976. The two men became friends; they would meet "maybe a couple of times a month." R. at 90.

From December of 1976, when this friendship was forming, until August of 1977, the State was proceeding against Monroe for the possession and delivery of marijuana. Accepting Monroe's estimate, it would appear that the two men met sixteen or more times during that period. The record indicates that Persley himself had been released from the Indiana State Farm only the previous June.

*GROUNDS FOR DISSENT*—The standard of proof at a hearing for the revocation of probation is a preponderance of the evidence. I.C. 35–7–2–2(d). In reviewing such a proceeding, we will not reweigh the evidence, but will look only to the evidence and reasonable inferences therefrom which support the judgment of the trial court. *Wilson v. State* (1980), Ind.App., 403 N.E.2d 1104.

Given this standard of review, I cannot say that it was unreasonable for the trial judge to conclude from the circumstantial evidence before him that two men who associated together over a period of many months, one recently out of prison and the other under immediate threat of imprisonment, would talk to one another about their encounters with the criminal justice and

---

1. In this context "knowingly" is not akin to our criminal code definition of "knowingly" which provides: "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. 35–41–2–2(b) (Burns Code Ed. 1979). While the precise meaning of the criminal code's "knowingly" remains somewhat elusive, we need not here determine whether it is subsumed in subsection (d) dealing with culpability as Judge Buchanan concludes. Suffice it to say that we are here concerned with the word "knowing" as it relates to a probation revocation which is civil in nature and not as it relates to an alleged criminal offense as covered by I.C. 35–41–2–2(a) through (d).

penal systems in this state. With reason the trial judge's credulity was not elastic enough to believe that Monroe did not "knowingly" associate with a convicted felon.

The majority would construe the word "knowingly" in a manner previously unknown to the criminal courts of Indiana. When our Criminal Code applies "knowing" culpability to an act, the culpability is applied "with respect to *every material element* of the prohibited conduct." I.C. 35–41–2–2(d). This is the meaning that criminal courts always attach to the word.

The applicable statute reads:

A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

I.C. 35–41–2–2(b).

The court which sentenced Monroe to probation was a criminal court. It imposed upon him conditions of probation in the form of positive commands forbidding certain conduct, upon pain of being brought before a *criminal* court and then being imprisoned. Labelling the proceedings a "civil proceeding" does not remove the trial court's penal language from the rules of construction we usually give penal language. The sentence, "you will not knowingly associate with anyone who has been convicted of a felony," was uttered by a criminal court, to warn a criminal defendant advised by a criminal lawyer what he must do to avoid imprisonment. I can not believe that for this one utterance, all participants must be understood to have abandoned the penal meaning of "knowingly" (however ill-defined the word may be) in favor of an *undefined* "civil" meaning.

In order to prove its case, then, the State needed to show by a preponderance of evidence: (1) That Monroe was aware of a high probability that he was associating with Persley; and (2) that Monroe was aware of a high probability that Persley had been convicted of a felony. Such proof need not necessarily be direct. As is often true, it may be circumstantial—a proposition that hardly needs citation of authority. The majority reads the condition of probation to require that Monroe be proved to have known of the conviction, *as though he had been told about it in so many words.* I see no reason to torture the language in this way.

I would affirm the revocation.